1

2

3

4

5

6

7

8       **IN THE UNITED STATES DISTRICT COURT**

9       **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  CHANOR SEE,                          ) Case No.: 1:09-cv-00941 JLT
                                         )
12              Plaintiff,               ) ORDER DIRECTING ENTRY OF JUDGMENT
                                         ) IN FAVOR OF DEFENDANT MICHAEL J.
13       v.                              ) ASTRUE, COMMISSIONER OF SOCIAL
                                         ) SECURITY, AND AGAINST PLAINTIFF
14  MICHAEL J. ASTRUE,                   ) CHANOR SEE
    Commissioner of Social Security,     )
15                                       )
                Defendant.               )
16  _____   )

17          Chanor See ("Plaintiff") asserts he is entitled to disability insurance benefits and

18  supplemental security income under the Social Security Act.  Plaintiff argues the administrative law

19  judge ("ALJ") failed to develop the record and erred in assessing his credibility.  Therefore, Plaintiff

20  seeks judicial review of the administrative decision denying his claim for benefits.  For the reasons

21  set forth below, the Court **AFFIRMS**.

22                          **PROCEDURAL HISTORY**[1]

23          Plaintiff filed applications for disability insurance benefits and supplemental security income

24  on October 12, 2007, alleging disability beginning June 2, 2006.  AR at 113-20.  The Social Security

25  Administration denied his claims initially on November 29, 2007, and upon reconsideration denied

26  the claims on June 26, 2008.  *Id.* at 42-66.  After requesting a hearing, Plaintiff testified before an

27  ALJ on October 29, 2009.  *Id.* at 24.

28  _____

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1   The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order

2   denying benefits on January 27, 2010.  AR at 12-19.  Plaintiff requested a review by the Appeals

3   Council of Social Security on the ALJ's decision, which was denied on March 10, 2010.  *Id.* at 4-6.

4   Therefore, the ALJ's determination became the decision of the Commissioner of Social Security

5   ("Commissioner").

6                                          **STANDARD OF REVIEW**

7          District courts have a limited scope of judicial review for disability claims after a decision by

8   the Commissioner to deny benefits under the Act.  When reviewing findings of fact, such as whether

9   a claimant was disabled, the Court must determine whether the Commissioner's decision is

10  supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's

11  determination that the claimant is not disabled must be upheld by the Court if the proper legal

12  standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y*

13  *of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

14         Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

15  reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

16  389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938).  The record as a whole

17  must be considered, as "[t]he court must consider both evidence that supports and evidence that

18  detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

19                                          **DISABILITY BENEFITS**

20         To qualify for benefits under Titles II and XVI of the Social Security Act, Plaintiff must

21  establish he is unable to engage in substantial gainful activity due to a medically determinable

22  physical or mental impairment that has lasted or can be expected to last for a continuous period of

23  not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a

24  disability only if:

25         his physical or mental impairment or impairments are of such severity that he is not only
           unable to do his previous work, but cannot, considering his age, education, and work
26         experience, engage in any other kind of substantial gainful work which exists in the
           national economy, regardless of whether such work exists in the immediate area in which
27         he lives, or whether a specific job vacancy exists for him, or whether he would be hired
           if he applied for work.

28

                                                  2

1   42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

2   *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990); *see also* 20 C.F.R. § 404.1512 ("In general, you have

3   to prove to us that you are blind or disabled.").  When a claimant establishes a prima facie case of

4   disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other

5   substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

6   **DETERMINATION OF DISABILITY**

7        To achieve uniform decisions, the Commissioner established a sequential five-step process

8   for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)-(f).  The process requires

9   the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of

10  alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of

11  the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4)

12  had the residual functional capacity[2] to perform to past relevant work or (5) the ability to perform

13  other work existing in significant numbers at the state and national level.  *Id.*  In making these

14  determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony.

15  20 C.F.R. §§ 416.927, 416.929.

16  A.   Relevant Medical Evidence

17        On June 9, 2006, Plaintiff went to the emergency room to receive pain medication for a

18  headache.  AR at 233.  Dr. John Hipskind noted Plaintiff had a normal gait and his motor strength

19  was 5/5.  *Id.* at 235.  In addition, Plaintiff's reflexes were symmetric and the Romberg test was

20  negative.  *Id.*

21        On July 21, 2006, Mary Anderson, FNP, diagnosed Plaintiff with chronic lower back pain

22  and right hip pain.  AR at 242.  Upon physical examination, Jonah Miller, MPT, determined

23  Plaintiff's strength was 5/5 in his lower extremities, and Plaintiff had "controlled symptoms with

24  exercise and stretches for back care."  *Id.* at 243.  Finding Plaintiff was "symptom free with no

25

26  ───────────────

27  [2] The residual functional capacity is a determination of what a claimant "can still do despite [his] limitations."  20 C.F.R. § 404.1545.  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

28

3

1   functional limitations," Mr. Miller recommended the physical therapy be discontinued on August 24,

2   2006.  *Id.*

3       Plaintiff had an MRI of his lumbar spine at Kawea Delta on September 29, 2006.  AR at 317.

4   The MRI showed the "[l]umbar vertebral body contour and alignment [were] normal with no facture

5   or sublaxation.  Disk heights are all maintained.  Slight loss of disc at L5-S1 compatible with

6   desiccation and degeneration."  *Id.*  In addition, at L5-S1 Plaintiff had "mild posterior disk bulging,

7   slightly effacing the thecal sac without appreciable spinal canal stenosis or neural foraminal

8   narrowing."  *Id.*  Consequently, Dr. Loeffler concluded Plaintiff had "mild intervertebral disc

9   degeneration at L5-S1, but no . . . significant abnormally."  *Id.*

10      Dr. Magdy Maksy performed a nephrology consultation on July 6, 2007.  AR at 208.  Dr.

11  Maksy determined Plaintiff had (1) hypertension, controlled; (2) chronic kidney disease, stage III;

12  and (3) proteinuria.  *Id.*  Dr. Maksy stated Plaintiff should have an ultrasound of his kidneys and be

13  re-evaluated for a possible need of a kidney biopsy.  *Id.*  In addition, Dr. Maksy recommended

14  Plaintiff "be counseled regarding a low-salt/low-protein diet."  *Id.*  The ultrasound revealed the

15  following: "Both kidneys remain normal is size.  The renal cortex is relatively echogenic in both

16  kidneys suggesting chronic parenchymal disease.  No evidence of a mass, hydronephrosis, or

17  perirenal abnormality.  The urinary bladder is grossly normal."  *Id.* at 217.  Following Dr. Maksy's

18  request for a biopsy, Dr. David Hewitt diagnosed Plaintiff with "recent onset of renal failure" on

19  August 31, 2007.  AR at 214.

20      On October 14, 2007, Plaintiff sought emergency care for back pain at Kaweah Delta.  AR at

21  300.  Plaintiff reported a "dull, throbbing" pain that began gradually but was "continuous in nature"

22  and worse with inspiration and movement."  *Id.*  An MRI of Plaintiff's back "showed minimal

23  herniation of lower lumbar L4 and L5 but no surgical problems."  *Id.* at 301.  In addition, a

24  musculoskeletal and neurologic exam showed Plaintiff's "upper and lower extremities [were] non-

25  tender with full range of motion" and he had symmetrical muscle strength.  *Id.*  Dr. Jerry Jacobson's

26  impression was Plaintiff had acute exacerbation of chronic back pain and left kidney insufficiency.

27      Dr. Wesley Jackson completed a physical residual functional capacity assessment of Plaintiff

28  on November 27, 2007.  AR at 356-60.  Dr. Jackson determined Plaintiff had the ability to:

frequently lift and carry 10 pounds and occasionally 20 pounds; stand or walk for a total of six hours in an eight-hour day; sit for six hours in an eight-hour day; frequently climb ramps, stairs, ladders, ropes and scaffolds; frequently stoop, kneel, crouch, and or crawl; and occasionally balance. *Id.* at 357-58. Dr. Jackson found Plaintiff had no visual, communicative or environmental limitations. *Id.* at 358-59. Further, Dr. Jackson concluded Plaintiff had no manipulative limitations and had unlimited push and pull capabilities. *Id.* at 357-58. Dr. Jackson noted, "The claimant's allegation[s] appear to be not very credible as to the extent of functional limitations." *Id.* at 360.

Throughout 2008 and 2009, Plaintiff received treatment from Dr. Bich-Hoa Nguyen and Dr. Henry Ow-Yong at Visalia Health Care Center. *See* AR 522-66. On February 27, 2008, Dr. Nguyen noted the results of an x-ray completed three weeks before showed no change from 2006 and minimal degenerative joint disease. *Id.* at 551. On April 8, 2008, Plaintiff reported "having the same back pain," and in June 2008 described the pain as burning, and at a level "6" out of 10. *Id.* at 548. On August 6, 2008, Plaintiff "[complained of] worsening back pain," and described it a "7" with sharp pains. *Id.* In October, Plaintiff described his back pain as a "4." *Id.* at 545. On January 13, 2009, Plaintiff requested stronger medication than his Tylenol/Codeine #3 that he took usually once a month. AR at 540, 544. Dr. Nguyen changed Plaintiff's medication for his back pain from Tylenol/Codeine #3 to Vicodin. *Id.* at 540. In March and May 2009, Plaintiff reported his pain was a "3." *Id.* at 535-38. In September and October 2009, Plaintiff reported no pain to the physicians. *Id.* at 524-26.

Dr. Duane Griswold examined Plaintiff's kidneys on June 12, 2009, and found the right kidney was smaller than the left. AR at 555. Dr. Griswold found no substantial changes from the exam in 2007, and noted Plaintiff's "urinary bladder is unremarkable." *Id.* In addition, Plaintiff had a normal pancreas and abdominal aorta. *Id.*

B.  Hearing Testimony

Plaintiff testified he went to school in Laos, but did not know what grade he finished. AR at 32. Plaintiff said he knew a "little bit" of English through working for a long time. *Id.* Plaintiff reported he was married, had six children, and lived with his family in a house. *Id.* at 30-31. According to Plaintiff, he would "lie down most of the day and stay home." *Id.* at 32. He reported

that he would watch television and sometimes take naps. *Id.* In addition, Plaintiff said he would go to church, and visited relatives once or twice a month. *Id.* at 33.

Plaintiff reported he worked previously at Hometown Buffet, first doing dishes and then stocking. AR at 33. He was required to take the boxes, which weighed 30 or 40 kilos each, and stock them. *Id.* In addition, he was a kitchen helper, and said he assisted with "big beef cooking." *Id.* Plaintiff said he no longer had an income but "got some food stamps." *Id.* at 31. In addition, he had a child receiving Social Security, and aid for two other children. *Id.*

According to Plaintiff, he was taking medication for high blood pressure. AR at 36. In addition, he went to a clinic to see Dr. Maksy to receive treatment for his kidney. *Id.* at 29. Plaintiff said he went to Visalia Health and Dr. Wynn, who referred Plaintiff to receive x-rays. *Id.* at 29-30. Plaintiff reported he could still drive and take care of his personal needs, and his only problem was his kidney. *Id.* at 31-32. Plaintiff said his kidney is working at "40 percent" and was given some medicine, but was told his kidney "cannot handle high potency medication." *Id.* at 34. Also, Plaintiff reported to problem with his kidney caused him to go to the bathroom at least once or twice an hour. *Id.*

Plaintiff testified he has right back pain: "I have this pain that's constant every day every single moment." AR at 34. Plaintiff said it was "not a very severe pain, but just a little bit of pain." *Id.* However, Plaintiff reported his pain became so painful the day before the hearing that he had to go to an emergency room to get a shot. *Id.* at 35-36. Plaintiff believed he was weaker due to the pain, but estimated he could lift and carry about four or five pounds, or a gallon of milk. *Id.* at 39. Also, Plaintiff said he was unable to sit still, but could sit for 30 minutes. Further, Plaintiff said he was taking medication for high blood pressure. *Id.* at 36.

Vocational expert ("VE") Judith Najarian testified after Plaintiff. The VE stated Plaintiff's past work at Hometown Buffet as a kitchen helper "addressees transferring supplies and delivering equipment to between storage area, work area, and delivery truck" in addition to washing dishes. AR at 37. Though this work was characterized in the DOT as medium, unskilled work, the VE stated Plaintiff performed the work at heavy. *Id.* In addition, a job of cook helper was medium, unskilled work.

6

1    The ALJ asked the VE to consider a person of "the same age, education, language, [and]

2    work background." AR at 38.  The individual "could lift and carry 20 pounds occasionally, 10

3    pounds frequently, sit, stand, or walk 6 with occasionally climbing ladders, ropes, and scaffolds, and

4    frequent stooping, crouching, crawling, climbing." *Id.*  The VE opined such an individual could not

5    perform Plaintiff's past work. *Id.*  However, the VE believed there were several jobs that would fit

6    the abilities described, including screw assembler, bottle line attendant, and poultry boner. *Id.*

7    According to the VE, no jobs would be available if the individual "would need access to a restroom

8    as necessary." *Id.*

9    C.   The ALJ's Findings

10   Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

11   gainful activity from the alleged onset date of June 2, 2006.  AR at 14.  Second, the ALJ found

12   Plaintiff has the following severe impairments: lumbar degenerative joint disease and chronic renal

13   insufficiency. *Id.*  These impairments did not meet or medically equal a listing. *Id.* at 15.

14   At the fourth step, to determine Plaintiff's residual functional capacity ("RFC"), the ALJ

15   considered "the entire record."  AR at 15; *see also* AR at 15-17.  The ALJ determined Plaintiff had

16   the RFC "to perform lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand, and

17   /or walk for 6 hours of an 8 hour day, frequently climb, stoop, crouch, crawl, and occasionally climb

18   ladders, ropes and scaffolds." *Id.* at 15.  Plaintiff was not capable of performing past relevant work.

19   *Id.* at 17.  However, the ALJ concluded Plaintiff was able to performing jobs existing in significant

20   numbers in the national economy, such as assembler, bottle line attendant, and poultry boner. *Id.* at

21   17-18.  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security

22   Act. *Id.* at 18.

23   **DISCUSSION AND ANALYSIS**

24   A.  The ALJ did not err in developing the record.

25   Plaintiff was not represented at the hearing before the ALJ, and he testified with the

26   assistance of an interpreter. *See* AR at 26-27.  The ALJ informed Plaintiff that he had the right to

27   have a representative, which Plaintiff declined. *Id.*  Plaintiff argues the ALJ failed to "fully and

28   fairly develop the record." (Doc. 12 at 5).  Specifically, Plaintiff asserts he had the right to object to

7

1   the entry of evidence and the use of a vocational expert, and should have been afforded the

2   opportunity to cross-examine the vocational expert. *Id.* at 5-9.

3        Although it is a claimant's burden to prove he is disabled, the law is well-established in this

4   Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's

5   interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  However, the law

6   imposes a duty on the ALJ to develop the record in limited circumstances.  20 C.F.R § 416.912(d)-

7   (f) (recognizing a duty on the agency to develop medical history, re-contact medical sources, and

8   arrange a consultative examination if the evidence received is inadequate for a disability

9   determination).  When a claimant is not represented by counsel, the ALJ must be "especially diligent

10  in exploring for all relevant facts." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  The

11  ALJ's duty is heightened also in cases where the claimant has mental impairments and may not be

12  able to protect his own interests. *Id.*; *De Lorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

13       1.  "HALLEX" does not confer legal rights to claimants.

14       Plaintiff asserts that "the failure to offer Mr. See the opportunity to object to the appearance

15  of the vocational expert" was a legal error, as was the failure to ask Plaintiff if he objected to medical

16  evidence being entered as exhibits into the record.  (Doc. 12 at 6-7).  According to Plaintiff, "The

17  Hearings, Appeals, and Litigation Manuel" ("HALLEX") requires the ALJ to ask a claimant if he has

18  any objections to a vocational expert testifying and to ask the claimant if he objects to exhibits being

19  entered into the record. (Doc. 12 at 7-8).

20       Notably, the Ninth Circuit has expressly stated, "HALLEX does not impose judicially

21  enforceable duties on either the ALJ or [the] court." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616

22  F.3d 1068, 1072 (9th Cir. 2010); *see also Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000) (finding

23  that "HALLEX is a purely internal manual and as such no legal force and is not binding" because "it

24  does not prescribe substantive rules").  Because the duties under HALLEX are not judicially

25  enforceable, the duties "do[] not confer a legal right." *Fernandes v. Astrue*, 2009 U.S. Dist. LEXIS

26  105953, at *19 (E.D. Cal. Nov. 13, 2009).  Consequently, Plaintiff's argument that the ALJ made

27  legal errors by failing to perform duties under HALLEX is unpersuasive.

28  ///

1

2.   Granting an opportunity to cross-examine the VE was within the ALJ's discretion.

2        At the hearing, the ALJ did not ask Plaintiff if he had questions to ask the vocational expert.

3    According to Plaintiff, "The failure of the ALJ to afford [Plaintiff] the opportunity to cross-examine

4    the vocational expert is legal error."  (Doc. 12 at 6).  Plaintiff asserts, "The vocational opinion

5    constituted the primary vocational basis for the ALJ's denial of benefits; consequently the vocational

6    expert was a crucial witness requiring cross-examination."  *Id.* at 6.

7        A claimant is entitled "to conduct such cross-examination as may be required for a full and

8    true disclosure of the facts."  5 U.S.C. § 556(d).  Consequently, the Ninth Circuit has determined a

9    claimant "is not entitled to unlimited cross-examination . . . The ALJ, therefore, has discretion to

10   decide when cross-examination is warranted."  *Solis v. Schweiker*, 719 F.2d 301, 301 (9th Cir. 1983).

11    Plaintiff asserts the ALJ "abused his discretion . . . by denying and not informing [Plaintiff] the

12   opportunity to conduct cross examination of the vocational expert." (Doc. 12 at 9).  However, such

13   an act was within the discretion of the ALJ.  The ALJ asked the vocational expert hypothetical

14   questions[3] based upon the medical record, and incorporated Plaintiff's testimony regarding his need

15   to use the restroom.  As a result, in answering the ALJ's questions, the VE gave testimony that was

16   both favorable and unfavorable to Plaintiff.

17       3.   The ALJ's duty to develop the record was not triggered by the record.

18       The duty to develop the record is "triggered only when there is ambiguous evidence or when

19   the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276

20   F.3d 453, 459-60 (9th Cir. 2201); *see* 20 C.F.R. § 416.912(e).  Here, there were no conflicts or

21   ambiguities to be resolved, and the ALJ did not find the record was insufficient to make a disability

22   determination.  Moreover, the ALJ explored the relevant facts at the hearing by asking Plaintiff about

23   his medical conditions, treatments sought and by whom, daily activities, and his abilities.

24   Consequently, the ALJ's duty to develop the record was not triggered by the medical evidence.  *See*

25   *Thomas v. Barnhart*, 278 F.3d 947, 978 (9th Cir. 2002) (duty not triggered when the ALJ did not

26

27

28

_____

[3] Plaintiff does not challenge the sufficiency of the hypothetical questions posed to the vocational expert.

1   conclude the medical report was inadequate to make a disability determination); *Mayes*, 267 F.3d at

2   459-60.

3       Moreover, a claimant must establish that he suffered prejudice or unfairness in the

4   administrative proceeding to demonstrate that an ALJ's decision should be remanded. *Key v.*

5   *Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985); *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981).

6   Here, Plaintiff failed to demonstrate that the ALJ failed discharge her duty to fully develop the

7   record and, if any such failure occurred, that Plaintiff suffered any prejudice or unfairness as a result.

8   *See Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994) ("Mere conjecture or speculation that

9   additional evidence might have been obtained in the case is insufficient to warrant a remand.").

10  B.   The ALJ set forth clear and convincing reasons to rejct Plaintiff's credibility.

11      Plaintiff asserts the ALJ failed to set forth legally sufficient reasons to reject his testimony.

12  (Doc. 12 at 9).  According to Plaintiff, "the ALJ decision is void of any sufficient rationale at all as

13  to why the ALJ ignored and disregard[ed] Mr. See's testimony." *Id.* at 12.

14      In determining credibility, an ALJ must determine first whether objective medical evidence

15  shows an underlying impairment "which could reasonably be expected to produce the pain or other

16  symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007), quoting *Bunnell*

17  *v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Here, the ALJ found Plaintiff's "medically

18  determinable impairments could reasonably be expected to produce the alleged symptoms." AR at

19  15.  However, the ALJ determined also that his "statements concerning the intensity, persistence, and

20  limiting effects of these symptoms are not credible." *Id.*

21      1.  Findings of the ALJ

22      An adverse finding of credibility must be based on clear and convincing evidence where there

23  is no affirmative evidence of a claimant's malingering and "the record includes objective medical

24  evidence establishing that the claimant suffers from an impairment that could reasonably produce the

25  symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160

26  (9th Cir. 2008).  The ALJ may not discredit a claimant's testimony as to the severity of symptoms

27  only because it is unsupported by objective medical evidence. *See Bunnell*, 947 F.2d at 347-48.  In

28  addition, the ALJ "must identify what testimony is not credible and what evidence undermines the

1   claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834; *see also Dodrill v. Shalala*, 12 F.3d

2   915, 918 (9th Cir. 1993).  Credibility findings "must be sufficiently specific to allow a reviewing

3   court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

4   arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.

5   2004).  Here, the ALJ considered Plaintiff's treatment history, his activities, and the medical

6   evidence.  AR at 16-17.

7                    *Treatment received*

8          In assessing Plaintiff's credibility about his symptoms, the ALJ may consider "the type,

9   dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c).  Further, the

10   treatment Plaintiff received, especially when conservative, is a legitimate consideration in a

11   credibility finding.  *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).  The Ninth Circuit has

12   "indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony

13   regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

14          The ALJ noted Plaintiff received Vicodin at Visalia Health Center "as needed for pain." AR

15   at 16. Further, the ALJ observed Plaintiff did not receive treatment for his chronic kidney disease:

16   "No treatment with medications was noted; treatment appeared to consist of observation." *Id.*  The

17   lack of treatment is a valid consideration in a credibility determination.  *Burch v. Barnhart*, 400 F.3d

18   676, 681 (9th Cir. 2005).  In addition, when an impairment "can be controlled effectively with

19   medication," the impairment cannot be considered disabling.  *Warre v. Comm'r of Soc. Sec. Admin.*,

20   439 F.3d 1001, 1006 (9th Cir. 2006).  Consequently, these were valid considerations by the ALJ.

21                    *Objective medical evidence*

22          As a general rule, "conflicts between a [claimant's] testimony of subjective complaints and

23   the objective medical evidence in the record" can constitute "specific and substantial reasons that

24   undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir.

25   1999).  The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole

26   ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a

27   relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v.*

28   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of

medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence"). Here, the ALJ did not base her credibility determination solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

In citing the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimants are not credible." *Dodrill*, 12 F.3d at 918; *see also Holohan*, 246 F.3d at 1208 ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony").

Specifically, the ALJ noted: "On June 9, 2006, the claimant had a normal gait, reflexes were symmetric and motor strength was 5/5; Romberg test was negative." AR at 16. In addition, the ALJ discussed the minimal findings of images taken of Plaintiff's back and kidneys. For example, as noted by the ALJ: "X-rays taken on January 29, 2008 showed minimal osteophytic spurring at L2, L3; x-rays taken on June 27, 2008 showed very minimal retrolithesis of L5 in relation to S1 and slight straightening of the lumbar lordotic curve, consistent with x-rays taken in 2006." *Id.* After summarizing the medical evidence, the ALJ concluded that "the MRIs and x-rays show minimal degenerative joint disease consistent with the ability to do light work." *Id.* at 17. In fact, this was consistent with Plaintiff's statement that he could "lift up to 30 pounds and [was] able to bend and carry things, although he experiences pain when doing so." *Id.*, citing AR at 146-48 ("can't carry over 30 pounds without having back pain").

*Daily activities*

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this

1   fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec.*

2   *Admin.*, 169 F.3d 595, 600 (9th Cir. 1999), citing *Fair*, 885 F.2d at 603.  For example, a claimant's

3   ability to cook, clean, do laundry and manage finances is sufficient to support an adverse finding find

4   of credibility.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).  Likewise, an

5   ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises,

6   gardens, and participates in community activities.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574

7   F.3d 685, 693 (9th Cir. 2009).  An ALJ must make a specific finding relating to the transferability of

8   the activities to a work place to refute a Plaintiff's allegations of disability.  *Orn v. Astrue*, 495 F.3d

9   625, 639 (9th Cir. 2007).

10       Plaintiff argues, "Nothing in [his] testimony provides any indication that he is capable of

11   performing anything other than a few basic daily activities and certainly not what is required of

12   substantial gainful work activity."  (Doc. 12 at 10).  As noted by the ALJ, Plaintiff "reported that he

13   visits his neighbors, vacuums, drives, shops for groceries and does the dishes."  AR at 17.  However,

14   the ALJ failed to meet the burden to find these activities were transferable to a work setting.

15                    2.  The ALJ's reliance on a legally insufficient reason was harmless error.

16       When an ALJ sets forth a reason for an adverse credibility finding that is legally insufficient,

17   the Court must consider whether the reliance on invalid reason was a harmless error.  *See Batson*,

18   359 F.3d at 1195-97 (applying a harmless error standard where the credibility finding was invalid).

19   The Ninth Circuit stated, "So long as there remains 'substantial evidence supporting the ALJ's

20   conclusion's on credibility' and the error 'does not negate the validity of the ALJ's ultimate

21   credibility conclusion,' such [error] is deemed harmless."  *Carmickle*, 533 F.3d at 1162, quoting

22   *Batson*, 359 F.3d at 1197.

23       Here, the ALJ properly considered Plaintiff's lack of treatment and the objective medical

24   evidence as part of the credibility determination.  Though the ALJ failed make a specific finding that

25   Plaintiff's activities were transferrable to a work setting, the Ninth Circuit indicated such activities

26   demonstrate a claimant is "quite functional."  *See Burch*, 400 F.3d at 680 (the claimant's activities

27   "suggest she is quite functional.  She is able to care for her own personal needs, cook, clean and

28   shop.  She interacts with her nephew and boyfriend.  She is able to manage her own finances…").

1   Moreover, the ALJ properly considered Plaintiff's lack of treatment and the objective medical

2   evidence as part of the credibility determination.  Substantial evidence in the record supports the

3   ALJ's credibility determination.  Consequently, the ALJ's failure to determine whether Plaintiff's

4   activities were transferrable to a work setting is a harmless error.

5   **CONCLUSION**

6         For the foregoing reasons, the ALJ did not err in developing the record through a failure to

7   perform duties articulated in HALLEX or by not giving Plaintiff an opportunity to cross-examine the

8   vocational expert.  Notably, Plaintiff failed to show any prejudice or unfairness resulted from the

9   administrative proceeding.  *See Key*, 754 F.2d at 1551; *Vidal*, 637 F.2d at 713.

10        In addition, the ALJ set forth clear and convincing reasons, supported by substantial evidence

11  in the record, for discounting Plaintiff's testimony.  The credibility determination was "sufficiently

12  specific" to allow the conclusion that the ALJ did not arbitrarily discredit Plaintiff's testimony.  *See*

13  *Moisa*, 367 F.3d at 885.  Where the evidence supporting rejection of a claimant's credibility is

14  substantial, and where the ALJ did not arbitrarily reject the Plaintiff's testimony, the decision will be

15  upheld even though the finding is not extensive as possible and does not consider all possible

16  factors.  *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (rejection upheld where the ALJ

17  considered the claimant's daily activities, notes of the treating therapist, and the claimant's response

18  to treatment).

19        Accordingly, **IT IS HEREBY ORDERED**:

20      1.   Plaintiff's appeal from the administrative decision of the Commissioner of Social

21         Security is **DENIED**; and

22      2.   The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael

23         J. Astrue, Commissioner of Social Security, and against Plaintiff Chanor See.

24  IT IS SO ORDERED.

25  Dated:  __July 21, 2011__                 **/s/ Jennifer L. Thurston**

26                                   UNITED STATES MAGISTRATE JUDGE

27

28